**KIRK–MAYER, INCORPORATED,**
etc., Plaintiff,

v.

**PAC ORD, INC., etc., et al.,**
**Defendants.**

**No. CV 83–7141 AWT.**

United States District Court,
C.D. California.

Jan. 24, 1986.

J. Michael Hennigan, Dana Carli Brooks, Greenberg, Hennigan & Mercer, Beverly Hills, Cal., for plaintiff.

Theodore K. Martin, Arcadia, Cal., for defendants.

## MEMORANDUM OPINION

TASHIMA, District Judge.

This is an action by an ousted government contractor against its successor for asserted violation of the Sherman Act, 15 U.S.C. §§ 1 & 2. Associated pendent state claims also are alleged. Defendants have moved for summary judgment on the Sherman Act § 2 claim and the pendent claims.[1] Based on the uncontroverted facts, I conclude that as a matter of law, defendant Pac Ord, Inc., cannot be held liable under § 2, the only remaining federal claim. I, thus, dismiss the entire action.

## I. THE UNDISPUTED FACTS

Pac Ord was the successful bidder for an exclusive "blue collar" contract to repair and maintain electronics equipment for the Naval Electronics Systems Engineering Center at Vallejo, California (the "Navelex Contract"). The Navelex Contract was for a three-year term beginning in 1982. Plaintiff Kirk-Mayer, Incorporated, had been the incumbent contractor for approximately 10 years, having last won a bid for a three-year contract in 1979. Four contractors submitted proposals (cost and technical) on the 1982 contract. Kirk-Mayer and Pac Ord, as the two lowest cost bidders, were invited by the Naval Supply Center in Oakland, California, to submit their best and final offers. Kirk-Mayer bid $9,020,968 and Pac Ord bid $8,786,230.59.

---

**1.** The Court earlier granted defendants' motion for partial summary judgment on plaintiff's claim under § 1 of the Sherman Act. The un-controverted facts were that there was no conspiracy, agreement or other concerted action. See discussion in Part III.C.1, *infra.*

As stated, the 1982 Navelex Contract for a three-year term was awarded to Pac Ord.

## II. ISSUES

Under well-established rules governing the grant or denial of such motions, *e.g., Simon v. United States,* 756 F.2d 696, 697 (9th Cir.1985), the issues presented by Pac Ord's motion for summary judgment on the § 2 claims are whether, on the uncontroverted facts, as a matter of law:

1. Pac Ord does not possess monopoly power in the relevant market, so as to defeat Kirk-Mayer's monopolization claim.

2. The "dangerous probability of success" element is absent so as to preclude Kirk-Mayer's attempt to monopolize claim.

## III. DISCUSSION

A. Section 2 Monopoly Power

■ The elements of a § 2 monopolization claim are well established. *See, e.g., Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* —— U.S. ——, 105 S.Ct. 2847, 2854, 86 L.Ed.2d 467 (1985). One essential element is defendant's possession of monopoly power—the power to control prices or exclude competition in the relevant market. *E.g., Greyhound Computer Corp. v. International Business Mach. Corp.,* 559 F.2d 488, 496 (9th Cir.1977), *cert. denied,* 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978). In this case, the definition of the relevant market is controverted. I accept for purposes of ruling on defendants' motion, plaintiff's contention of the relevant market. Plaintiff's marketing expert has defined the services market as the market for five specific interrelated types of maintenance, repair, installation and fabrication services for Navy electronics equipment (Navelex blue collar services). He has defined the geographic market as the area within a 15-mile radius of the Navy's facili-

ty at Vallejo, California. Thus, plaintiff's definition of the relevant market is limited to the services rendered under the Navelex Contract awarded to defendant and four "peripheral" contracts for similar services at Vallejo.[2] The question then is did Pac Ord possess monopoly power in this market?

■ Few cases have analyzed market power in this context, *i.e.,* an exclusive, fixed-price government contractor for a fixed term. The recent case of *National Reporting Co. v. Alderson Reporting Co.,* 763 F.2d 1020 (8th Cir.1985), involved Sherman Act § 2 charges against the successful bidder for the court reporting services contract of the United States Tax Court. As in the case at bench, defendant Alderson underbid plaintiff National who had held the contract for several years prior thereto. There, the contracts were only for one-year terms. However, unlike the case at bench, the Tax Court's policy was to allow the incumbent contractor to renew the contract if it agreed to do so at no increase in price and was rendering satisfactory services.

Thus, the Eighth Circuit observed that "Alderson could not control prices, because if it tried to raise its price, the contract would again be up for bids." *Id.* at 1023. Further, there were "other court-reporting companies who can bid and try to undercut the company holding the contract." *Id.* Thus, there also was no power in the incumbent contractor to exclude competition. Here, the absence of monopoly power is even clearer. Like *National Reporting,* the Navelex Contract here is for a fixed term at a fixed price.[3] There is no power to exclude any competitor from bidding on the contract. The uncontroverted evidence is that there are numerous firms capable of bidding on the Navelex Contract and that non-incumbency was not a competitive disadvantage. Here, however, unlike *Nation-*

2. By accepting this definition for purposes of ruling on the pending motion (because it is a controverted issue of fact), the Court does not indicate its approval of it; rather, the Court is quite skeptical of the proffered market definition. *See, e.g., Twin City Sportservice v. Charles O. Finley & Co.,* 512 F.2d 1264, 1271–72 (9th Cir.1975).

3. Minor exceptions to the fixed price concept do not materially affect the characterization of the contract as a fixed price contract.

*al Reporting*, the incumbent holder of the Navelex Contract, including Pac Ord, could not extend the contract by agreeing not to raise its price. *National Reporting* is indistinguishable. I agree with its holding that in the circumstances of this case—a government contractor who obtains the contract for a fixed term at a fixed price in open bidding against a number of other bidders—the contractor does not have the power to control prices or exclude competition.

Kirk-Mayer attempts to distinguish the case at bench factually from *National Reporting* on the basis that the Navelex Contract is only one of five "blue collar services" contracts at Vallejo and because it is the largest, the holder of the Navelex Contract (also referred to as the "build-to-print" contract) exercises monopoly power over the other four contracts. In 1981, two of these contracts were awarded to Kirk-Mayer and the remaining two to a third company. According to plaintiff, "without the build-to-print contract, Kirk-Mayer was unable to service" the two contracts and "relinquish[ed] them to Navelex." The third company also relinquished its two contracts. Since then, these services also have been provided by Pac Ord. Thus, plaintiff argues that defendant by predatory (below cost) pricing gained a monopoly over the relevant market which includes all five contracts. The argument is unpersuasive. *National Reporting's* analysis would apply regardless of whether the government chose to offer for bidding the Navelex work in one, two, five or any other number of contracts.

In substance, Kirk-Mayer's contention is that all five blue collar contracts should be treated as a single, integrated economic unit, *i.e.*, that scale economies made it uneconomical for a contractor to attempt to perform any of the remaining four Navelex contracts without the base of the build-to-print or Navelex Contract which was far larger than any of the others. Kirk-Mayer, in fact, refers to the remaining four contracts as "peripheral" contracts. Thus, Kirk-Mayer's complaint concerning the remaining contracts does not depend on how the Navelex Contract was obtained by the successful bidder. Since under Kirk-Mayer's theory, scale economies dictate that award of the four peripheral contracts will always follow the award of the Navelex Contract, economic realities dictate that the five contracts be treated as one. Thus, the gist of Kirk-Mayer's § 2 complaint is exclusion from the Navelex Contract.

**B. Section 2 Attempt to Monopolize**

█ The Eighth Circuit also held in *National Reporting* that because of the defendant's "inability to raise prices without undergoing another bidding process," under the § 2 attempt claim "there was never a dangerous probability of success." 763 F.2d at 1025. In this Circuit also "a dangerous probability of success," is one of the "three elements of an attempt claim under section 2 of the Sherman Act." *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014, 1027 (9th Cir.1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982).[4]

█ Here too, because it was a short-term, fixed price contractor, Pac Ord could not raise prices or exclude competition. Thus, even assuming that Pac Ord's bid was below its average variable costs, or

---

**4.** As the discussion in *Inglis* indicates, there is some "uncertainty" about the meaning of this requirement. *See id.* at 1029–30. What appears to be an aberrant statement is made in *Forro Precision, Inc. v. International Business Mach. Corp.*, 673 F.2d 1045, 1059 (9th Cir.1982), that "this Circuit has rejected the premise that probability of actual monopolization is an essential element of proof of attempt to monopolize." However, this statement has been treated as referring to something other than the "dangerous probability of success" element. *See Aurora*

*Enter., Inc. v. National Broadcasting Co.*, 688 F.2d 689, 695–96 (9th Cir.1982). Moreover, the more recent cases continue to follow the claim's formulation set forth in *Inglis*. *See, e.g., De Modena v. Kaiser Found. Health Plan, Inc.*, 743 F.2d 1388, 1395 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1230, 84 L.Ed.2d 368 (1985); *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1192 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985). Thus, it is clear that the requirement continues to exist in this Circuit.

marginal costs, it is highly doubtful that such pricing was "predatory" since Pac Ord could not reap predation's benefits.[5] *See National Reporting,* 763 F.2d at 1025; *Inglis,* 668 F.2d at 1031–32. The uncontroverted facts indicate that at this time there are 15 firms, in addition to the parties here, capable of bidding on the Navelex Contract, *i.e.,* actual or potential competitors. Pac Ord obviously cannot exclude any of those firms from bidding on the contract when its present term expires. In the meantime, under the contract, it is incapable of raising its price. In this uncontroverted factual circumstance there never could be a dangerous probability of success. Therefore, summary judgment appropriately also is granted on Kirk-Mayer's § 2 attempt to monopolize claim.

C. Pendent State Claims

 Kirk-Mayer's complaint also asserts pendent claims under California law for violation of the Cartwright Act, Cal. Bus. & Prof.Code § 16700, *et seq.,* and for violation of the Unfair Practices Act, *id.* at § 17000, *et seq.* Defendants have moved for summary judgment on these claims as well or, in the alternative, that they be dismissed pursuant to the Court's discretion under *UMW v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Here, since all federal claims will now be dismissed, that factor weighs heavily in exercising the Court's discretion under *Gibbs.*

"When federal claims are dismissed before trial, the question whether pendent state claims should still be entertained is within the sound discretion of the district court. Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed."

*Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985) (citations omitted). One situation where dismissal of state claims is proper is "When the state issues apparent-

ly predominate...." *Wren v. Sletten Constr. Co.,* 654 F.2d 529, 536 (9th Cir. 1981). However, it may be proper to retain jurisdiction over state law claims after dismissal of all federal claims. *See In re Nucorp Energy Sec. Litig.,* 772 F.2d 1486, 1491 (9th Cir.1985). Here, it is useful to treat the two pendent claims separately.

1. *Cartwright Act.* The basis of the summary judgment motion on the Cartwright Act claim is that it should be controlled by this Court's earlier grant of summary judgment in defendant's favor on the Sherman Act § 1 claim. That ruling was predicated on the uncontroverted showing of defendants that no conspiracy, agreement or other concerted action had been shown. The uncontroverted facts on the issue of the existence of a conspiracy have not changed since the Court's grant of summary judgment to defendants on the § 1 claim.

 The Cartwright Act, like the Sherman Act, requires a "trust," "combination" or some other form of joint conduct. Cal. Bus. & Prof.Code § 16720. In fact, the Cartwright Act is "patterned upon the federal Sherman Act and ... hence federal cases interpreting the Sherman Act are applicable with respect to the Cartwright Act." *Chicago Title Ins. Co. v. Great W. Fin. Corp.,* 69 Cal.2d 305, 315, 70 Cal.Rptr. 849, 444 P.2d 481 (1968). Plaintiff, in fact, virtually has conceded on this issue and does not argue against summary judgment on the Cartwright Act claim. Thus, because the issue is identical to the Sherman Act § 1 issue previously decided, I exercise my discretion to determine this claim on the merits. *See Bright v. Bechtel Petroleum, Inc.,* 780 F.2d 766, 771 (9th Cir.1986) (proper to decide pendent claim after dismissal of federal claim where both state and federal claims involved "the same issue"). I grant defendants' summary judgment motion on this claim for the same reason the § 1 claim was dismissed earlier:

---

5. This circumstance also casts doubt on whether plaintiff can prove the existence of specific in-

tent. *See Inglis,* 668 F.2d at 1027–28.

Although summary judgment is not ordinarily favored on this type of issue [absence of conspiracy] and plaintiff is permitted to rely on circumstantial evidence, the plaintiff is required to come forward with *some* support for its allegation. *Program Eng'g v. Triangle Publications*, 634 F.2d 1188, 1195 (9th Cir. 1980). Here, defendants have rebutted with probative evidence every inference that plaintiff would ask the Court to draw. They have denied the alleged conspiracy and offered reasonable explanations for all of the circumstances that plaintiff suggests are suspicious. Even viewing plaintiff's evidence in the most favorable light, plaintiff has failed sufficiently to rebut defendants' evidence to raise a genuine issue of material fact. *Id.* Accordingly, defendants are entitled to summary judgment on the § 1 claim." Memo. Order, Dec. 17, 1984.

2. *Unfair Practices Act.* The complaint also alleges a claim under the California Unfair Practices Act.[6] Cal.Bus. & Prof.Code § 17000, *et seq.* This act, *inter alia*, prohibits sales below cost. Cal. Bus. & Prof.Code § 17043. As noted earlier, the predatory conduct alleged in this case—sales below cost—is a controverted issue of fact. The Unfair Practices Act, unlike the Cartwright Act, does not mirror federal law. It may proscribe conduct permitted under federal law. *See Inglis*, 668 F.2d at 1049. Therefore, since questions of fact remain and because state law analysis differs from the federal claims, the cases counsel that discretion should be exercised in favor of dismissal without prejudice.[7]

## IV. CONCLUSION

For the reasons stated, the Court grants defendants' motion for summary judgment

on the Second Claim, both for monopolization and attempt to monopolize, and on the Third Claim for violation of the Cartwright Act. The Court exercises its discretion under *Gibbs* to dismiss the Fourth Claim for violation of the California Unfair Practices Act without prejudice to its being pursued in state court.

---

6. Although not alleged in its complaint, on the motion plaintiff takes the position that the Fourth Claim is also susceptible of being read as stating a claim under the "Unfair Competition Statutes," Cal.Bus. & Prof.Code § 17200, *et seq.* In view of the disposition of this claim, it is unnecessary to reach the issue of whether a statutory unfair competition claim has been adequately alleged.

7. The Court notes that a state court action has been pending between the parties since 1982 and that unfair competition claims are asserted in that action. Even without such a pending action, no statute of limitations problems should be encountered because of California's application of the equitable tolling doctrine to pendent claims dismissed under *Gibbs*. *See Mattson v. City of Costa Mesa*, 106 Cal.App.3d 441, 455 n. 3, 164 Cal.Rptr. 913 (1980).