**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-6206
_____

D. C. Docket No. CV 94-H-1361-NE

COLSA CORPORATION, a corporation organized
and existing under the laws of Delaware with its
principle place of business within the State
of Alabama,

Plaintiff-Counter-
Defendant-Appellant,

versus

MARTIN MARIETTA SERVICES, INC., a corporation
organized and existing under the laws of the State
of Delaware with its principle place of business
within the State of Maryland,

Defendant-Counter-
Claimant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 23, 1998)**

Before BIRCH, Circuit Judge, HILL and KRAVITCH, Senior Circuit
Judges.

PER CURIAM:

Plaintiff Colsa Corporation ("Colsa") appeals the district court's grant of summary judgment for Martin Marietta ("Martin Marietta") on Colsa's antitrust claims. We AFFIRM.

## I. BACKGROUND

At issue in this case is a government contract to provide "operation and maintenance" services to the United States Navy in support of the Atlantic Fleet Weapons Training Facility located in Roosevelt Roads, Puerto Rico (the Contract). For many years, Martin Marietta, or one of its predecessors in interest,[1] had been awarded the Contract. In March 1990, Martin Marietta and Colsa entered a "Teaming Agreement," which provided that Colsa would assist Martin Marietta to obtain the Contract and then Colsa would support Martin Marietta by providing software services under the Contract. This support was contingent, however, on Martin Marietta being awarded the Contract.

---

[1]To avoid confusion, "Martin Marietta" includes its predecessors in interest.

On April 15, 1991, Martin Marietta was awarded the Contract for a base period of six months, with four one-year options exercisable by the government. On May 15, 1991, Martin Marietta entered into a fixed price subcontract with Colsa whereby Colsa agreed to provide a limited number of personnel to support Martin Marietta in performing the Contract.

The government exercised subsequent options on the first of October 1991, 1992, and 1993. On each occasion, Martin Marietta entered into a subcontract with Colsa; Colsa served as the subcontractor for Martin Marietta until June 1994. The Contract was scheduled to be re-solicited and awarded in 1995.

In February 1994, Colsa entered into a teaming agreement with Raytheon, a competitor of Martin Marietta, concerning the next procurement of the Contract. Martin Marietta learned about Colsa's new agreement with a competitor and began to consider Colsa to be a competitive threat. In May 1994, Martin Marietta provided Colsa with notice that it was terminating the subcontract

3

with Colsa, effective June 12, 1994 (prior to the end of the third option period).[2] That the termination of the subcontract was not related to performance problems by Colsa is undisputed. Martin Marietta did not enter into a subcontract for the fourth option period (beginning in October 1994). The government announced the rebidding of the Contract in October 1994. In October 1996, the new Contract was awarded to ITT.

On June 7, 1994, Colsa filed this action against Martin Marietta for violations of Section 2 of the Sherman Act due to anti-competitive conduct in the termination of the subcontract. Colsa specifically contends that Martin Marietta sought to create or to maintain a monopoly through illegal competitive conduct. The

---

[2]Colsa, however, contends that prior to October 1993, Martin Marietta knew that it would not reteam with Colsa and sought to reteam with a competitor -- Tower Systems. Colsa claims that Martin Marietta secretly concealed this intention in order to string Colsa along until it was too late for it to re-team with another competitor for the rebid process. As a result, Colsa argues that it had to forgo discussions about reteaming with ITT or Loral between September and December 1993, as it was waiting to hear from Martin Marietta. Martin Marietta claims that it terminated the subcontract with Colsa because it teamed with Raytheon in February 1994, thereby making it a competitive threat.

district court granted summary judgment in favor of Martin Marietta on the antitrust claim because Colsa failed to show that Martin Marietta had market power in the relevant market, a prerequisite to a monopolization claim.[3]  Colsa appeals.

---

[3]Neither party, nor the court below, addresses the issue of whether Martin Marietta has market power.  Instead, they focus on the definition of "relevant market," which can affect whether a party has market power.  Colsa contended that the relevant market in this case is the Contract alone.  On the other hand, Martin Marietta argued that the relevant market extended far beyond the one Contract at issue here, and included other operation and maintenance contracts performed elsewhere.  The district court found that Colsa failed to define adequately the relevant market which, in turn, apparently prevented a finding that Martin Marietta had sufficient market power to sustain an antitrust claim.

## II. DISCUSSION[4]

The issue on appeal is whether the district court erred by granting summary judgment for Martin Marietta after concluding that Colsa failed to define properly the relevant market. Summary judgment orders are reviewed de novo. Scala v. City of Winter Park, 116 F.3d 1396, 1398 (11th Cir. 1997). Summary judgment is appropriate if, after viewing all the evidence in favor of the non-moving party, there is no genuine issue on any material fact. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Adickes v. S.H.

---

[4]As a preliminary matter, we disagree with Colsa's contention that merely because the definition of "relevant market" is a factual question, summary judgment is inappropriate. Summary judgment is clearly available even for factual issues. See American Key Corp. v. Cole Nat'l Corp., 762 F.2d 1569, 1579 (11th Cir. 1985). Further, the fact that two witnesses provided testimony, in favor of Colsa, regarding the relevant market cannot preclude summary judgment. Colsa states that its witnesses were experts in government procurement -- not federal antitrust law. The issue in this case, however, is the definition of "relevant market" -- an antitrust term as defined by antitrust law. Therefore, the witnesses could offer nothing more than lay opinion testimony. We have stated that "[c]onstruction of a relevant economic market or a showing of monopoly power in that market cannot . . . be based upon lay opinion testimony." Id.

Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The district court determined that Colsa improperly defined the relevant market and granted summary judgment for Martin Marietta based on that conclusion. While we agree that summary judgment was appropriate, we do so on a different basis.[5] As stated, Colsa's argument does not show how Martin Marietta's conduct was anticompetitive so as to support an antitrust claim.

The Contract at issue in this case has two aspects: (1) service of the Contract and (2) procurement of the Contract. Colsa expressly states that the alleged antitrust violation is Martin Marietta's "termination of [Colsa's] subcontract in June 1994." Colsa asserts that this was predatory conduct intended to "eliminat[e Colsa] as a competitor in violation of Section 2 of the Sherman Act." In addition, Colsa contends that the only relevant

_____

[5]"[T]his court may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court." Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558, 1561 (11th Cir. 1992) (citing cases).

time is the one that covers the termination of the subcontract and specifically rejects the district court's analysis of the case from the standpoint of the Contract procurement.[6]

In other words, Colsa appears only to argue that Martin Marietta, by terminating Colsa's subcontract for services, engaged in anticompetitive conduct during the service of the Contract.[7] We fail to see how this conduct can be characterized as anticompetitive for several reasons. First, Colsa cannot claim that

---

[6]This is presumably the result of the fact that neither Colsa nor Martin Marietta was awarded the Contract during the subsequent procurement, thereby making the claim that Martin Marietta had sufficient market power to monopolize the procurement process difficult to maintain.

[7]As a result, the cases cited by Colsa in support of its argument are inapplicable for several reasons. First, the cases are not controlling authority. Second, two of the cases cited involve claims of anticompetitive conduct during the procurement process. See National Reporting Co. v. Alderson Reporting Co., 763 F.2d 1020 (8th Cir. 1985); F. Buddie Contracting, Inc. v. Seawright, 595 F.Supp. 422 (N.D. Ohio 1984). Colsa does not make such a claim in this case. Simply because those cases involved public contracts, does not make them relevant. Third, the other case cited by Colsa involved a joint venture contract -- as opposed to a subcontract -- whereby each party was awarded the government contract, albeit through a joint entity. See Tower Air, Inc. v. Federal Express Corp., 956 F. Supp 270 (E.D.N.Y. 1996). This case is completely different. Martin Marietta alone -- and not a single entity comprised of Colsa and Martin Marietta -- was awarded the contract. The fact that the subcontract was labeled a "Teaming Agreement" did not create a joint venture relationship giving each party some right to the public contract.

Martin Marietta monopolized -- or attempted to monopolize -- its own contract by terminating a subcontract. All contracts involve, in some sense, a monopoly over the performance of the contract, which is necessarily controlled by the parties to the contract. It is not anticompetitive for Martin Marietta (a party to the Contract) to exclude Colsa (a non-party to the Contract) from performing services under the Contract. Any rights that Colsa may have against Martin Marietta sound in contract instead of antitrust law.[8]

For these reasons, we find that the district court did not err by granting summary judgment for Martin Marietta. Colsa has failed to allege anticompetitive conduct upon which an antitrust claim could be predicated.

AFFIRMED.

---

[8]In fact, this case seems to involve nothing more than a breach of contract claim. The alleged improper conduct is the termination of a subcontract. Further, the injury alleged by Colsa is damage "to its business interests in the amount of $1,485,189 which represents the amount remaining to be paid under its current fixed price contract and the amount negotiated under the remaining option." The remedy sought appears to involve purely contract damages.