**ALABAMA AMBULANCE SERVICE, INC., Plaintiff,**

v.

**CITY OF PHENIX CITY, ALABAMA, et al., Defendants.**

No. CIV. A. 98–A–921–E.

United States District Court, M.D. Alabama, Eastern Division.

Oct. 21, 1999.

Deborah H. Biggers, Tuskegee Institute, AL, for plaintiff.

Jeffrey A. Brown, W. Donald Morgan, Columbus, GA, for defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by the Defendant, CRHS Long Term and Home Care, Inc. ("CRHS"), on July 27, 1999 (Doc. # 34). Also before this court is a Motion to Strike filed by CRHS (Doc. # 43).

Plaintiff, Alabama Ambulance Service, Inc. ("Alabama Ambulance"), filed its Complaint on August 19, 1998, against both CRHS and the City of Phenix City (the "City" or "Phenix City"). Alabama Ambulance and the City filed a joint Motion to Dismiss the City on September 17, 1999, after a settlement was reached (Doc. # 47).

Alabama Ambulance filed a Motion for Default Judgment against CRHS on September 25, 1998. On October 2, 1998, CRHS filed its Answer with the court. Consequently, on October 13, 1998, this court entered a Consent Order finding that the Motion for Default Judgment was moot. On January 13, 1999, CRHS filed a Motion for Judgment on the Pleadings. On February 25, 1999, this court denied CRHS's Motion for Judgment on the Pleadings.

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for

its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

### III. *FACTS*

The submissions of the parties establish the following facts viewed in the light most favorable to the nonmovant:

Alabama Ambulance is an African–American owned and operated corporation. Alabama Ambulance has provided ambulance service in and around Phenix City, Alabama for thirty years. CRHS, a non-minority owned corporation, also has provided ambulance service in Phenix City.

On February 27, 1996, Phenix City issued a solicitation for bids to provide emergency medical services and transports in response to emergency 911 center notifications in Phenix City. Prior to the bid announcement by the City, Alabama Ambulance had shared the contract for emergency 911 medical services with other ambulance service providers, operating on a rotational basis. In response to the bid solicitation, CRHS and Alabama Ambulance each submitted a bid.

On September 9, 1996, Phenix City awarded the bid to CRHS and entered into a contract with CRHS under which CRHS became the exclusive provider of emergency 911 medical and transport services in Phenix City. CRHS subsequently entered into a subcontract with Alabama Ambulance whereby the two companies agreed to handle the emergency 911 calls in Phenix City on a rotational basis beginning in November of 1996. On August 17, 1997, however, CRHS unilaterally canceled the subcontract with Alabama Ambulance.

Alabama Ambulance alleges that CRHS violated 15 U.S.C. § 2 by conspiring with Phenix City and entering into an exclusive contract with the City to provide emergency 911 ambulance service. *See* Complaint ¶ 13. Alabama Ambulance also alleges that CRHS has deprived Alabama Ambulance of the "rights to make and enforce contracts" as in violation of 42 U.S.C. § 1981. *See id.* ¶ 14. Finally, Alabama Ambulance alleges that CRHS wrongfully canceled its subcontract to provide ambulance service. *See id.* ¶ 11.

### IV. *DISCUSSION*

CRHS has challenged each of Alabama Ambulance's claims in its Motion for Summary Judgment. The court will address the antitrust claim in this opinion, but will defer ruling on the Motion as to the other claims and the Motion to Strike until after hearing from counsel at the pretrial hearing.

■ The Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 1 et seq. (1997), was enacted to protect competition and prevent monopolies. *See Standard Oil Co. v. Federal Trade Commission,* 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239 (1951). The Act rests on the theory that "the unrestrained interaction of competitive forces will yield the best allocation of ... economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conducive to the preservation of ... democratic political and social institutions." *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 4, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). The Sherman Act was not enacted to protect competitors from competitive business practices. Thus, to determine whether a practice violates the anti-trust laws, the court must look at the effect of the practice challenged on competition in the field as a whole. *See Checker Motors Corp. v. Chrysler Corp.,* 283 F.Supp. 876 (S.D.N.Y.1968) (explaining that competition, not competitors, is protected by the Sherman Act). Section one of the Sherman Act prohibits the formation of trusts to restrain trade, while section two of the Act prohibits the monopolization of markets.

> Section two of the Sherman Act states, Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation,

> or, if any other person, $35,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2. Section 2 affords a basis for three distinct antitrust offenses: monopolization, attempt to monopolize, conspiracy to monopolize. *See Heatransfer Corp. v. Volkswagenwerk,* 553 F.2d 964, 981 (5th Cir.1977) (recognizing three claims) [1]; *see also Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Servs.,* 746 F.Supp. 320, 326 (S.D.N.Y.1990). Alabama Ambulance contends that CRHS and the City are "conspiring to put minority owned [Alabama Ambulance] out of business and have caused a monopoly to exist in the area of emergency medical services and ambulance services in Phenix City, Alabama, that substantially affects interstate commerce ...." Complaint ¶ 13. From its Complaint, it appears that Alabama Ambulance is alleging a monopolization claim and a conspiracy to monopolize claim.

■ Before addressing the two § 2 claims specifically, the court must find that the threshold jurisdictional requirement for a Sherman Act claim is met. When alleging a Sherman Act claim in the Eleventh Circuit "jurisdiction requires a focus on the interstate markets involved in the defendant's business activities." *Shahawy v. Harrison,* 778 F.2d 636, 640 (11th Cir. 1985). Jurisdiction can be met in two ways: the activities must either be "in interstate commerce" or the activities must "affect interstate commerce." *See Burke v. Ford,* 389 U.S. 320, 321, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967); *see also Chatham Condominium Ass'ns v. Century Village,*

---

1. In the case of *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted Fifth Circuit law prior to September 31, 1981, as binding on the Eleventh Circuit.

 Other cases in the Eleventh Circuit have stated that only two claims exist under a § 2 claim, namely monopolization and attempted monopolization. *See Ad–Vantage Tel. Dir. Consult. v. GTE Directories,* 849 F.2d 1336, 1341 (11th Cir.1987). However, Eleventh Circuit cases have addressed the conspiracy

to monopolize claim as a separate claim. *See Levine v. Central Florida Medical Affiliates, Inc.,* 72 F.3d 1538, 1555–56 (11th Cir.1996) (giving elements of monopoly, attempted monopolization, and conspiracy to monopolize). The statute includes monopolization, attempted monopolization, and conspiracy to monopolize. *See* 15 U.S.C § 2. Consequently, this court finds that binding precedent indicates that there are three § 2 claims as stated in the statute.

*et al.*, 597 F.2d 1002, 1007 (5th Cir.1979). The latter test comes from the well-settled rule that the interstate commerce requirement can be satisfied even if the "source or application of the business restraint is entirely local." *Huelsman v. Civic Center Corp.*, 873 F.2d 1171, 1174 (8th Cir.1989).[2]

▇▇▇ Local activity can satisfy the interstate commerce requirement "if the restraint has a 'substantial' effect on interstate commerce," and "stifle[s] or restrain[s]" such commerce. *Id.* at 1175. Therefore, to establish jurisdiction a plaintiff must demonstrate by submission of evidence that the defendants' local activities have a substantial effect on some other appreciable activity in interstate commerce. *See McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 242, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). A plaintiff is not required to show that the defendants' challenged conduct itself had a substantial effect on interstate commerce, as the Supreme Court has said: "If establishing jurisdiction required a showing that the unlawful conduct itself had an effect on interstate commerce, jurisdiction would be defeated by a demonstration that the alleged restraint failed to have its intended anticompetitive effect." *Id.* at 243.[3] The plaintiff must only establish that there exists a sufficient nexus between the challenged activity and interstate commerce so that it can be said "'as a matter of practical economics'" that there is "a not insubstantial effect on the interstate commerce involved."[4] *Id.* at 246, 100 S.Ct. 502.

There is some dispute as to whether a court can look at the activities of a plaintiff to determine whether a defendant's activities affect interstate commerce. *See Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.*, 710 F.2d 752, 766–68 (11th Cir.1983) (hereinafter *"CAT"*). *McLain*, which has given the Eleventh Circuit guidance in this area, focused on the activities of the defendant, but as the *CAT* court pointed out, the *McLain* case "involved plaintiffs who were consumers rather than businesses." *CAT*, 710 F.2d at 766 n. 31. The *CAT* court found that a court should initially look at the defendant's interstate commerce activities but that often times a court will have to look at the plaintiff's activities as well to determine if jurisdiction exists. Consequently the *CAT* court found, "when deter-

---

2. This "aggregation of affect" theory harks back to the Supreme Court's holding in *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

3. The court recognizes that the circuits are split as to the interpretation of which activities of the defendant must affect interstate commerce. *See* ABA Section of Antitrust Law, *Antitrust Law Developments* 32–33 (4th ed.1997). The Supreme Court announced in *McLain*, "To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' ... activity." *McLain*, 444 U.S. at 242, 100 S.Ct. 502. Confusion arose, however, when the Court went on to say, "Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful." *Id.* These two comments by the Supreme Court have led to a circuit split over what activities must affect interstate commerce. *Compare United States*

*v. ORS, Inc.*, 997 F.2d 628, 629 n. 4 (9th Cir.1993) (noting that to meet the "effect on commerce test" the plaintiff had to allege that the defendant's business had a substantial effect on commerce) *with Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 808–10 (1st Cir.) (finding that the defendant's "unlawful activity" must affect interstate commerce). The Eleventh Circuit has adopted the more lenient interpretation, requiring only that the defendant's general business affect interstate commerce. *See Shahawy*, 778 F.2d at 641.

4. The Eleventh Circuit has found that "[t]he reach of the Sherman Act is coextensive with Congress' power under the Commerce Clause." *McLain*, 444 U.S. at 241, 100 S.Ct. 502. Thus, the ultimate question for the court to ask when addressing a question of interstate commerce is whether Congress can prohibit the challenged conduct under the Commerce Clause. *See Chatham*, 597 F.2d at 1008.

mining whether interstate commerce is affected by an alleged violation courts will often examine both the defendant's relationship with interstate markets and the plaintiffs." *Id.* After all, the *CAT* court noted, this "approach makes good sense because injury to the plaintiff may result directly in injury to the market." *Id.*

Alabama Ambulance only addresses how its business operations allegedly have a substantial effect on interstate commerce. *See* Pl. Br. at 3. Alabama Ambulance contends that it spent "thousands of dollars each year" purchasing supplies from out of state suppliers. *See id.* To evidence these expenditures, Alabama Ambulance submitted over fifty invoice receipts for supplies purchased from companies located outside of the state of Alabama and for services rendered by non-Alabama companies.[5] *See* Pl. Br. Exhs. CRHS claims that the "contract and subcontract at issue which [Alabama Ambulance] alleges support its claim for damages based upon the violation of the [Sherman Act] deal exclusively with the provision of emergency medical transport services within Phenix City, Russell County, Alabama." Def. Br. at 4. CRHS alleges that all of the activities challenged are local in nature and do not affect interstate commerce. *See id.*

The court notes that Alabama Ambulance does not address whether CRHS's activities affect interstate commerce.[6] However, because the Eleventh Circuit has recognized that the defendant's activi-

ties are not the only activities to consider when deciding the jurisdictional issue, the court is willing to overlook this flaw and consider Alabama Ambulance's evidence. At least one other court has found that an ambulance service provider in a single community may affect interstate commerce.[7] Also, courts have found that "a plaintiff's purchase of supplies from out of state or its use of interstate financing has frequently been held to satisfy the interstate commerce requirement on the theory that if the plaintiff were competitively injured by the restraint, it would be forced to reduce its use of supplies or financing." Antitrust Law Developments 35–36 (citing *CAT,* 710 F.2d at 767–68). Because Alabama Ambulance has provided some evidence of interstate commerce and because this evidence was in the form of supplies bought out of state, the court finds that, although Alabama Ambulance's evidence on this point is not overwhelming, it is sufficient to meet the jurisdictional burden, and this court may consider its § 2 claims.

Assuming that proper jurisdictional facts exist, however, the court concludes that the plaintiff has failed to present sufficient evidence to create a genuine issue of material fact to support Alabama Ambulance's monopoly or conspiracy to monopolize claims.

■ The Supreme Court has made clear that summary judgment may be particularly appropriate in an antitrust case be-

---

5. The court notes that the evidence of interstate commerce submitted by Alabama Ambulance does not evidence expenditures during the time period of the subcontract or contract. The contract between the City and CRHS commenced on September 9, 1996, and was to run for 24 months. *See* Contract Exh. ¶¶ 1 & 8. The subcontract between CRHS and Alabama Ambulance commenced on November 18, 1996 and ended on August 17, 1997. *See* Sub–Contract Exh. ¶ 1.

6. The court does note, however, that CRHS is a Georgia company doing business in Alabama.

7. In *Springs Ambulance Service, Inc. v. City of Rancho Mirage, et al.,* it was pled that "[m]ed-

ical supplies, ambulances and gasoline, manufactured and/or processed outside the state of California, are purchased in connection with the ambulance services provided" by the parties to the suit. *See* No. CV82–5917CBM, 1983 WL 1878, at *6 (C.D.Cal. Sept.27, 1983), rev'd in part on other grounds, 745 F.2d 1270 (9th Cir.1984). In addition, the plaintiff in *Springs Ambulance* alleged that the activities of the city and the other defendants "affect the likelihood that persons and business presently located outside of California [would] seek employment or start businesses for the purpose of rendering ambulance services ...." *Id.* at *7. Judge Marshall found that there was "a sufficient nexus" between the ambulance service and interstate commerce to support an federal antitrust claim. *See id.*

cause of the chill antitrust litigation can have on legitimate price competition. *See Matsushita,* 475 U.S. at 594, 106 S.Ct. 1348. Consequently, "when opposing a motion for summary judgment, an antitrust plaintiff must present evidence that tends, when interpreted in a light most favorable to plaintiff, to exclude the possibility that defendant's conduct was as consistent with permissible competition as with illegal conduct." *McGahee v. Northern Propane Gas Co.,* 858 F.2d 1487, 1493 (11th Cir.1988) (citing *Matsushita,* 475 U.S. at 588, 106 S.Ct. 1348). Alabama Ambulance is unable to meet this burden.

■■■■ A claim of monopoly under § 2 requires two elements: (1) possession of monopoly power in the relevant market, and (2) willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *See United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *T. Harris Young & Assoc., Inc. v. Marquette Electronics, Inc.,* 931 F.2d 816, 823 (11th Cir.), cert. denied, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991). Having monopoly power is a key element of the monopolization claim. Monopoly power is defined as "the power to raise prices to supra-competitive levels or ... the power to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market." *US Anchor Mfg., Inc. v. Rule Indus., Inc.,* 7 F.3d 986, 994 (11th Cir.1993) (quoting *American Key Corp. v. Cole Nat'l Corp.,* 762 F.2d 1569, 1581 (11th Cir.1985)); *see United States v. E.I. du Pont & Co.,* 351 U.S. 377, 391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956) (noting that monopoly power is "the power to control prices or exclude competition").

■■■ In the present case, CRHS alleges that it does not have the requisite monopoly power. *See* Def. Br. at 5–7. According to CRHS, the contract that was bid on by both Alabama Ambulance and CRHS was a contract for a fixed term at a fixed cost.

*See* Def. Br. at 6. CRHS states that although it won the bid it was not able to "control prices or exclude competition" in the emergency 911 field. *Id.* CRHS alleges that it could not raise prices during the term of the contract and that it would have to submit another bid at the end of the contract to maintain its contract for providing emergency 911 services to Phenix City. *See id.* These facts are similar to the facts of *Kirk–Mayer, Inc. v. Pac Ord, Inc.,* 626 F.Supp. 1168 (C.D.Cal.1986).

The *Kirk–Mayer* court found that a successful bidder for a contract does not necessarily have monopoly power for purposes of the Sherman Act. *See Kirk–Mayer,* 626 F.Supp. at 1170. In *Kirk–Mayer,* the defendant successfully bid for "an exclusive 'blue collar' contract to repair and maintain electronics equipment for the Naval Electronics Systems Engineering Center at Vallejo, California." *Id.* at 1169. The contract was for a fixed term at a fixed price. *See id.* at 1170. Other firms bid for the contract, including the plaintiff. *See id.* The plaintiff alleged that the defendant violated § 2 of the Sherman Act by monopolizing the market after it won the bid. *See id.* The *Kirk–Mayer* court found that "a government contractor who obtains the contract for a fixed term at a fixed price in open bidding against a number of other bidders ... does not have the power to control prices or exclude competition." *Id.* at 1171. Consequently, because the bid winner did not have the power to control prices, the winner did not have monopoly power.

Alabama Ambulance argues that *Kirk–Mayer* is not applicable to the present case because CRHS entered into a subcontract with Alabama Ambulance. *See* Pl. Br. at 4. The court, however, disagrees. Simply because CRHS later sub-contracted with Alabama Ambulance does not mean that CRHS gained monopoly power over the emergency 911 market. CRHS, as *Kirk–Mayer* illustrates, did not have monopoly power over the 911 market when it contracted with Alabama Ambulance. Thus,

when CRHS terminated its subcontract with Alabama Ambulance it was not controlling the market in a way so as to have market power-it was only exercising control over the contract it was awarded by the City.

The Eleventh Circuit, in *Colsa Corp. v. Martin Marietta Services, Inc.*, 133 F.3d 853 (1998), also has addressed the monopoly power issue in a contract bidding situation. *Colsa* found that a subcontractor who was suing a government contractor under the Sherman Act for alleged anticompetitive conduct has a suit in contract not in antitrust law. This court finds this holding applicable in this case. In *Colsa*, the Eleventh Circuit reviewed the granting of summary judgment for the government contractor. Colsa had filed a suit against Martin Marietta for violations of § 2 of the Sherman Act. *See Colsa*, 133 F.3d 853. Martin Marietta had been awarded a contract with the United States Navy to provide "operation and maintenance" services for the Atlantic Fleet Weapons Training Facility in Puerto Rico. *See id.* at 854. The contract was for six months with four one-year options exercisable by the government. *See id.* In order to perform the contract, Martin Marietta entered into a subcontract with Colsa "whereby Colsa agreed to provide a limited number of personnel to support Martin Marietta in performing" the government contract. *Id.* Colsa served as a subcontractor for the original term and three additional renewals. *See id.* Before the final option by the government was exercised, Martin Marietta terminated the subcontract with Colsa. *See id.* at 855.

Colsa argued that the alleged antitrust violation was Martin Marietta's " 'termination of [Colsa's ] subcontract .... ' " *Id.* at 856 (quoting Colsa Complaint). Colsa claimed that the termination of the subcontract was predatory and was an attempt to eliminate Colsa as a competitor. *See id.* The Eleventh Circuit stated, "We fail to see how this conduct can be characterized

as anticompetitive.... It is not anticompetitive for Martin Marietta (a party to the [government contract] ) to exclude Colsa (a non-party to the [government contract] ) from performing services under the [government contract]." *Id.*

Although *Colsa* is a predatory pricing case, the monopoly power question is premised on similar facts to the present case. CRHS was awarded the emergency 911 service contract by Phenix City through a bidding process. CRHS subcontracted with Alabama Ambulance in order to fulfill its contract with the City. CRHS then terminated its contract with Alabama Ambulance during the term of its contract with the City. This conduct, like the conduct in *Colsa*, can not be characterized as anti-competitive and is not actionable under § 2 of the Sherman Act. Consequently, Alabama Ambulance has not provided the court with evidence of a genuine issue of material fact to sustain a monopoly claim.[8] As in *Colsa*, this court finds this case to sound in contract law and not in antitrust law.

 Alabama Ambulance also alleges that CRHS conspired to monopolize. Conspiracy to monopolize has three elements: (1) the existence of a combination or conspiracy, (2) an overt act in furtherance of the conspiracy, and (3) specific intent to monopolize. *See United States v. Yellow Cab Co.*, 332 U.S. 218, 225, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), overruled on other grounds by *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); *Hill Aircraft & Leasing Corp. v. Fulton County*, 561 F.Supp. 667, 677 (N.D.Ga.1982), *aff'd mem.*, 729 F.2d 1467 (11th Cir.1984). Because this court has found that the alleged activities of CRHS and Phenix City do not amount to an activity that can be considered illegal monopolization, CRHS can not be found liable for conspiracy to monopolize, either. *See* Antitrust Law Developments 305 (noting that "where the

---

**8.** The court further notes that Alabama Ambulance does not address what the "relevant market" is in this case. Relevant market is an element of the monopoly claim.

alleged conspiracy, if successful, would not amount to illegal monopolization, there may be no liability for conspiracy to monopolize") (citing *Phoenix Elec. Co. v. National Elec. Contractors Ass'n,* 861 F.Supp. 1498, 1514 (D.Or.1994) (finding that because a shared monopoly does not violate § 2, neither does conspiracy to create shared monopoly)). In this situation, even if there was a conspiracy to have a white owned company provide the emergency 911 services in Phenix City, the contract did not violate § 2; therefore, the conspiracy to monopolize claim cannot stand.

## V. *CONCLUSION*

CRHS's Motion for Summary Judgment is due to be GRANTED as to the 15 U.S.C. § 2 claims. A separate Order and Judgment will be entered in accordance with this Memorandum Opinion.